Matter of Glick v Ruland (2020 NY Slip Op 04164)





Matter of Glick v Ruland


2020 NY Slip Op 04164


Decided on July 22, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 22, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
ROBERT J. MILLER
JOSEPH J. MALTESE
VALERIE BRATHWAITE NELSON, JJ.


2019-07756
 (Docket No. F-10298-10)

[*1]In the Matter of Holly Tina Glick, appellant,
v
Jason Scott Ruland, Sr., respondent.


Gail M. Blasie, P.C., Garden City, NY, for appellant.
Adam H. Moser, Rockville Centre, NY, for respondent.



DECISION & ORDER
In a proceeding pursuant to Family Court Act article 4, the mother appeals from an order of the Family Court, Suffolk County (George F. Harkin, J.), dated May 21, 2019. The order, insofar as appealed from, granted the father's objections to an order of the same court (Barbara Lynaugh, S.M.) dated March 5, 2019, which, after a hearing, inter alia, directed the father to pay child support in the sum of $652 per week.
ORDERED that the order dated May 21, 2019, is modified, on the law, the facts, and in the exercise of discretion, by deleting the provision thereof granting the father's objection to so much of the order dated March 5, 2019, as directed him to pay child support in the sum of $652 per week, and substituting therefor a provision granting that objection to the extent of directing the father to pay child support in the sum of $448 per week; as so modified, the order dated May 21, 2019, is affirmed insofar as appealed from, without costs or disbursements, and the order dated March 5, 2019, is modified accordingly.
The parties were married in 2001 and have two children. In November 2009, the parties entered into a stipulation of settlement (hereinafter the stipulation) which was incorporated but not merged into a judgment of divorce entered in January 2010. Under the stipulation, it was agreed that the mother would have residential custody of the children and the father would pay the mother basic child support in the amount of $873 per month. The stipulation contained a provision that the parties would "jointly confer and agree on extra-curricular activity expenses including sport, music, dance, clubs, travel and the like, which may create additional shared costs." In 2015, the mother filed a petition for modification, and, on consent of the father, his basic child support obligation was increased to $1,800 per month.
In November 2018, the mother filed the instant petition to modify the 2015 child support award, alleging, inter alia, that her expenses had increased due to the children's participation in various extracurricular activities. After a hearing, the Support Magistrate found that the combined parental income under the Child Support Standards Act (hereinafter CSSA) was $215,260, which exceeded the applicable statutory cap of $148,000 (see Family Ct Act § 413[1][c][2], [3]; Social Services Law § 111-i[2][b]). In determining the father's child support obligation, the Support Magistrate applied the statutory child support percentage under the CSSA—25% for two children—to the entire amount of combined parental income, including $67,260 in excess of the [*2]statutory cap, and directed the father to pay child support in the sum of $652 per week.
The father filed objections on the ground, inter alia, that in determining to apply the statutory percentage to the combined parental income in excess of the statutory cap, the Support Magistrate improperly considered the cost of the children's extracurricular activities, when the parties had not conferred and agreed upon the same. By order dated May 21, 2019, the Family Court granted the father's objections. The mother appeals.
"The CSSA sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling" (Matter of Freeman v Freeman, 71 AD3d 1143, 1144; see Matter of Peddycoart v MacKay, 145 AD3d 1081, 1083-1084). Where combined parental income exceeds the statutory cap, in fixing the basic child support obligation on income over the ceiling, the court has the discretion to apply the factors set forth in Family Court Act § 413(1)(f), or to apply the statutory percentages, or to apply both (see Matter of Peddycoart v MacKay, 145 AD3d at 1084). "[T]he Family Court must articulate an explanation of the basis for its calculation of child support based on parental income in excess of the statutory cap" (id. ). "This articulation should reflect a careful consideration of the stated basis for its exercise of discretion, the parties' circumstances, and its reasoning why there [should or] should not be a departure from the prescribed percentage'" (id., quoting McCoy v McCoy, 107 AD3d 857, 858). "In addition to providing a record explanation for deviating or not deviating from the statutory formula, a court must relate that record articulation to the factors set forth in Family Court Act § 413(1)(f)" (Matter of Peddycoart v MacKay, 145 AD3d at 1084 [internal quotation marks omitted]).
We agree with the Family Court that, in light of the provision of the stipulation requiring that the parties confer and agree upon the extracurricular activities of the children, the costs of these activities, to which the father had not agreed, did not provide an appropriate rationale for the Support Magistrate's calculation of child support based on parental income in excess of the statutory cap. "The terms of a separation agreement incorporated but not merged into a judgment of divorce operate as contractual obligations binding on the parties" (Matter of Filosa v Donnelly, 94 AD3d 760, 760 [internal quotation marks omitted]). "A matrimonial settlement is a contract subject to principles of contract interpretation, and a court should interpret the contract in accordance with its plain and ordinary meaning" (id. [internal quotation marks omitted]). Here, the plain and ordinary meaning of the stipulation was that the costs of the children's extracurricular activities were to be considered apart from the basic child support obligation. Moreover, the record did not support the Support Magistrate's conclusion that the extracurricular activities of the children were the result of the children's "extraordinary needs."
The only other relevant factor under Family Court Act § 413(1)(f) identified by the Support Magistrate was that the father's gross income was considerably higher than the mother's. However, the Support Magistrate did not relate this factor to the testimony elicited at the hearing or explain why the income disparity was relevant to the court's determination (see Matter of Peddycoart v MacKay, 145 AD3d at 1084). In our view, the record did not establish that the difference between the parties' gross incomes warranted applying the statutory percentage to the parties' combined income in excess of the statutory cap of $148,000. Notably, the father testified that he had not consented to the children's participation in the activities in question because these activities were prohibitively expensive.
Thus, under the circumstances, we find that it would have been appropriate to apply the statutory percentage to the statutory cap of $148,000, with no further child support obligation based on the combined income over that amount. As such, we agree with the Family Court's determination to grant the father's objections to the Support Magistrate's order insofar as the father was ordered to pay basic child support in the amount of $652 per week.
However, we agree with the mother that the father's pro rata share of the basic child support award should have been modified by applying the statutory percentage to the parties' combined income up to the statutory cap of $148,000. Since more than three years had passed since [*3]the 2015 modification order, the mother was not required to establish a substantial change in circumstances nor that either party's gross income had changed by 15% or more (see Family Ct Act § 451[3][b][i]; Matter of Calta v Hoagland, 167 AD3d 598, 598).
Because the parties do not contest the income calculations made by the Support Magistrate, in the interest of efficiency and judicial economy (see Matter of Peddycoart v MacKay, 145 AD3d at 1085), rather than remitting the matter to the Family Court, we modify the order dated May 21, 2019, to direct the father to pay child support in the sum of $448 per week, representing his pro rata share of 25% of the parties' combined income up to $148,000.
MASTRO, J.P., MILLER, MALTESE and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court